13-3284. How wonderful to have you for two cases, USA v. Christopher Baines. May it please the Court and the Council? Again, I'm still Elizabeth Pollack, and I'm here on behalf of the appellant Christopher Baines in this case. And the primary issue that I'd like to focus on with regards to Mr. Baines's sentencing is the issue of the relevant conduct finding of the district court. And in this case, Mr. Baines was charged with a conspiracy that took place from the middle of 2007 through early 2008. And he had three co-conspirators in the indictment. Of those co-conspirators, everyone got a much, much, much lower sentence than he did and also had a much, much lower drug quantity finding than he did. And the reason for that was that the district court found that prior drug dealing activity dating all the way back until 2004 should be counted against Mr. Baines in terms of relevant conduct. And that is not the case. That should not have happened. And I did want to note, we are not here today challenging the factual findings of the district court. The district court is entitled to credit the testimony of the witnesses that it observes personally, and it did personally observe Ms. Burgos, who was one of the co-defendants, and Mr. Gutierrez, who was a defendant in a different case altogether. And so we are not saying that the things that they said should not be believed. However, even taking the things they said as accurate, there is simply not enough relating the conduct that they described and the conduct in the instant case to connect them for the purposes of a relevant conduct finding. And, you know, the case law, the language is very strong on this point. Relevant conduct is a huge problem for defendants because it takes very little for a government attorney to say, okay, well, these instances are connected. There's lots of drugs. It's a big period of time. You should get credit for all the drugs. And all of a sudden, the sentencing range is doubled or tripled against an unsuspecting defendant who pleads guilty to a single count. Was the purported gap that occurred in 2007 raised below as a reason not to include the pre-2007 drug amounts? It wasn't raised in that specific manner. It was raised through argument. The attorney for Mr. Baines, I was not in the district level. He did not make that specific objection because the pre-sentence report actually found the level 32, which is what he had wanted. So there was no objection to the pre-sentence report on that basis. At the sentencing hearing, it was argued that the drug, the nature of the drug dealing changed between 2004 and 2006 and then between 2007 and 2008. But it was not specifically argued there is a gap that needs to be found. However, that doesn't matter for our purposes today because this is an application of a guideline, the relevant conduct guideline, and that can be reviewed de novo even if it was not specifically raised, even though it's kind of borderline as to whether or not it was articulated clearly at the district court level. I'm going to change direction for a second. Given that he's already been sentenced and Amendment 782 wasn't raised below, why shouldn't we simply direct that he follow procedure and follow a motion now that the amendment has taken? You should. You absolutely should. There's no doubt that if the case is remanded on this basis, then I think it would be appropriate for the district court to consider the two-level reduction at that time. But under the current status of a guideline amendment, he can easily file a motion under 3582. And that's the way that our office has been instructed to handle it, and I believe that would be the proper way to handle it. That was right as the amendment was coming up when that was raised. And so I don't think at the time we really knew how to handle that, but that would be the appropriate way to handle it under the current scheme. Have you figured out what that might do for him? Well, it would mean a reduction. It applies to every guideline. So it would mean at minimum a two-level reduction. He was not a career offender. So it would give him some sentencing relief, although it would not take him down to a level 32, which is what we're requesting be imposed on remand if the relevant conduct finding is reversed. And so it would be a nice little help, but it wouldn't be as much as knocking off 27,000 kilograms of heroin, which is the appropriate thing to do in this case. And one of the arguments that I also did not write the initial brief in this case, but was appointed for the reply. One of the other arguments that counsel made in the initial brief was that the district court did not consider the disparity in sentencing between the co-defendants when rendering the sentence. The district court did mention, well, everybody got a big break in this case, and I'm going to give him a below-guideline sentence as well. But the reason that Mr. Baines was as high up as he was in the guidelines is only because of the relevant conduct, which was not given to the other individuals in the conspiracy. Judge Paul Meyer expressly noted his leadership role. His leadership, that's not disputed, Your Honor. We're not disputing that he was a manager. It was actually called the Baines Trafficking Organization, so I don't think there's any way to dispute that. However, the relevant conduct that gave him all of that heroin dates all the way back to 2004, and the record is clear that from 2004 to 2006, he was dealing in very large amounts of cocaine and heroin. But in 2007, that fell off, and it fell off for a variety of reasons, including a lack of supply, and also because he owed his suppliers money and they refused to deal with it anymore. The transcript of the sentencing hearing specifically notes that he had to regroup. He had to gather his guys back together, create new connections, start a new conspiracy to distribute. And even though there's no disputing that he was a drug dealer and dealt in large amounts, he shouldn't be given credit for every drug deal he ever did all the way back to the beginning of his relationship with any of the same parties. The test is whether or not it's similar, regular, and proximal in time to the previous conduct, and it's not. There was the break in 2007. The people that he was charged with, apart from Ms. Burgos, Mr. Smith and Mr. Parker, the other two co-conspirators, were not involved in the prior deals back in 2004 through 2006. There was a whole host of other people involved in the deals between 2004 and 2006 who were not, again, involved after 2007. And so there's a clear break, not only in the parties involved and the time, but, you know, the case law states you just can't give somebody loads and loads and loads of drug quantity for something that's not connected to the offense in any way. And so is it similar? Well, he was a drug dealer in 2004 and he was a drug dealer in 2008. And apart from that, the relationships are different enough that the relevant conduct should not have been imposed against him. And on that basis, we request a remand for reversal of that decision. Let me ask you just a quick question related to the procedural aspect of it. If we disagree with you on the relevant conduct and affirm on that, you don't need a remand in order to get the benefit in the district court of the guideline amendment, correct? That's correct. Okay. Thank you. Thank you. You would just make a motion? May it please the court? My name is Tom Shakeshaft on behalf of the United States. Hi, Mr. Shakeshaft. Judge, I will start with the main point that the appellant has made with regard to this gap. The district court did not clearly err in its relevant conduct findings here. And the similarity, regularity, and temporal proximity of this, this was one conspiracy. A close read, I think we read the sentencing transcript quite differently. Mr. Gutierrez was a supplier of heroin and cocaine to Mr. Baines between 2004 and 2008, the end of the conspiracy period. And Ms. Burgos was Mr. Baines's drug runner through the entirety of that period of time. It is true that there was a period of time when the supply slowed, but it never stopped. Were the drug sales in a same geographic area? They were. They were in West Chicago, Maywood, the west side of Chicago. And I can point the court to a couple of places in the transcript where those two witnesses make clear that there was no gap here. This was a continuous operation. At page 56 of the sentencing transcript, Ms. Burgos testified that things got slow, but she never testified that they stopped. They never testified that Mr. Baines completely changed his operation. She said that the quantity of drugs simply slowed down a little bit. But even she, at page 60 of the sentencing transcript, says that in 2007 they slowed to two kilos of heroin a month. That's still a lot of drugs. And it is certainly slower than what she testified in 2004 and 2005 when she said she was delivering for Mr. Baines a kilo of heroin a week. But two kilos of heroin a month, just because it slowed down a little bit in 2007, whether he was on hard times or owed people money, that's not a break. This was the same conspiracy using the same modus operandi. From 2004 through 2008, the testimony of the sentencing hearing was that Mr. Baines rented apartments that he used as stash houses for Ms. Burgos. Same operation. That during this period of time, Mr. Gutierrez testified that he delivered heroin and cocaine to Mr. Baines through the entire period. There was no break. He also testified that things slowed down. But what Mr. Gutierrez testified to was that, and this is in 2007, Mr. Gutierrez says at the transcript of page 126, asked approximately, how frequently did you supply Christopher Baines with heroin in 2007? I would say it was like once a month. And what quantity? One kilo. And the same with cocaine, about five kilos a month. And that's in 2007 when this alleged gap took place. It wasn't a gap. It's a distortion of what was testified to at the sentencing hearing. A slowdown. Pardon me? A slowdown. It was a slowdown. And whether that's a result of a slowdown in sources of supply, it was testified that Mr. Baines owed people money. Not atypical in the drug world. If you owe debts, they stop supplying you. And Mr. Gutierrez testified that he was supplying Mr. Baines on credit. And so until he could pay it off, things slowed down. And both Ms. Burgos and Mr. Gutierrez testified that those, that that supply, and they continued working for Mr. Baines until 2008 when everybody was arrested. I would also point out, just in terms of the other evidence that the district court had in front of it, to determine that this was a similar modus operandi for this, that using the same stash houses, Ms. Burgos and Mr. Gutierrez testified regarding the same delivery points, happened to be at the North Riverside Mall, a Best Buy, 23rd and Cermak here in Chicago, testified to the same cars, even the same color of delivery cars that they used. And then the district court also had intercepted calls with Mr. Baines himself, bragging about how much money he was making when he also admitted that he had no gainful employment. So there was a lot of other corroboration. We introduced a kilo wrapper of heroin that both Ms. Burgos and Mr. Gutierrez said was consistent with the kilo quantities that Mr. Baines was receiving and Ms. Burgos was distributing on, both taking delivery of and distributing on his behalf during the entirety of this period of time, from 2004 to 2008. So I think that the idea that there was a gap here is inconsistent with the testimony and the full record. It was a slowdown in 2007, as Judge Bauer points out. With regard to the other two quick issues that were raised, the mitigation issue, the district court did the entire sentencing colloquy was about Mr. Baines' mitigation arguments and his family circumstances. So I think the district court and the district court did give Mr. Baines a below-guideline sentence, a substantially below-guideline sentence in this case. And with regard to the 3582, the recent amendments, I do agree that if the court were to affirm the relevant conduct finding in the sentence in this case, Mr. Baines still will have the ability and should file a 3582 motion. But a remand, this was a properly imposed sentence based on the record before the district court of the 3582 motion. Down the road from Mr. Baines, it is available to him, and he can make his arguments as to whether or not he believes that a sentence reduction based on the amendments is appropriate. If the court has no further questions, we would ask that the district court sentence be affirmed. I do have a question, actually, but it's a global question. To your knowledge, has this court been asked in other cases to remand in light of 782? Because we need to have a consistent policy on these requests, and this is the first such remand request that I've seen. I'm glad you said to my knowledge. To my knowledge, the answer to that is no. Your cohort is looking totally blank. To my knowledge, I don't know. But I think it is our office's position that this court should not remand sentences that were appropriately, sentences that were imposed under the previous. I mean, our office has been going forward with sentencings in the last few months where the district court has explicitly sentenced under the new amendment. Even though it hadn't passed? I believe that's correct. That's odd. But the correct mechanism, I believe, would be for each defendant who has been sentenced to file a 3582 motion once cases are affirmed, as it were. Ms. Pollack, do you have anything more for us? Only to point out that we're focusing on three parties here, and in reality this is a very large-scale operation from 2004 to 2006. Then there was the change in both the amounts of drugs and also the people involved in the conspiracy. As I said, Parker and Smith were not involved previously. Different kind of drugs or different source of drugs? Different kinds and also different sources. They made a whole brand-new conspiracy. Well, yeah, it did. The conspiracy that existed previously was involving a whole separate group of people, and when that failed because of his inability to pay or anything else. Well, she was always the drug runner. She was always involved. Yes, she was, and Mr. Gutierrez was too. That's a conspiracy, isn't it? No. Two or more? Two or more. That's correct. I also did want to note for the court that the policy that I'm aware of from the U.S. Attorney's Office in our district is that they would allow the two-level reduction at the district court level if the defendant signed a waiver from filing any further 3582 motions in the future. And from this point forward, our office is being appointed for all motions filed in the district court. So the proper procedure is to put on file a motion, the initial review takes place, and then our office is appointed in meritorious cases. Listen, thank you all so much, if nothing else, for just sitting here this whole time. No, thank you very much. The case will be taken under advisement. This court will be in recess until Monday.